UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GREIST, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LENDUS, LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-02411-AMO<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION & DENYING AS MOOT MOTION TO STAY PENDING RULING ON MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 29, 32 |

Before the Court are LendUS LLC's motion to compel arbitration and its motion to stay the case pending a ruling on that motion. The motions are suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Accordingly, the March 13, 2025 hearing is **VACATED**. Having carefully considered the papers filed by the parties and the relevant legal authority, the Court **DENIES** LendUS's motion to compel arbitration for the reasons set forth below. Because this order resolves the motion to compel arbitration, LendUS's motion to stay this case pending a ruling on that motion **DENIED AS MOOT**.

I.   **BACKGROUND**

Plaintiff Barbara Greist worked as a Loan Assistant for LendUS from December 2017 to January 2022. ECF 29-2 ("Merritt Decl.") ¶ 8. Plaintiff Susan Schell also worked as a Loan Assistant for LendUS, from January 2017 to April 2022.[1] *Id.* According to Katrina Merritt, who worked as LendUS's Human Resources Manager from 2014 to 2018, and its Director of Human Resources from 2018 to 2022,[2] "[a]s a mandatory condition of employment, LendUS required all

---

[1] Referencing the operative complaint, LendUS indicates that the third Plaintiff – Melanie Green – was employed from March 2020 to May 2021. *See* ECF 29-1 at 3.

[2] LendUS sold its assets and began winding down its operations in early 2022. Merritt Decl. ¶ 4.

1  employees, including Plaintiffs, to enter into arbitration agreements, requiring submission of all

2  employment-related disputes with LendUS to final, binding arbitration." *Id.* ¶ 9.  Merritt declares

3  that "[f]rom 2017 through dissolution, LendUS utilized the same form Agreement to Arbitrate

4  ('Arbitration Agreement') for all employees, regardless of position or location." *Id.* ¶ 10.

5       The exemplar agreement attached to Merritt's declaration provides:

> [B]y this Agreement, the Parties mutually agree that any claim, dispute or controversy ("the Claim") arising out of or relating to the Employment Agreement (Loan Officer Employment Agreement or Employee Offer Letter) or employment relationship between the Company and the Employee shall be resolved by final and binding arbitration in accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA").  The arbitration described in this Agreement shall be the exclusive means of resolving any Claim between the Company and the Employee, and the Parties agree that no other action will be brought by the Employee or the Company in any court or other forum and that the Parties waive any right to have their claims or disputes resolved by a court or jury trial.  Notwithstanding the foregoing, with respect to any Claim or Claims for a provisional remedy such as a temporary restraining order and/or a preliminary injunction pending arbitration, either Employee or the Company may, at their respective discretion, seek such relief in a court of competent jurisdiction.

ECF 29-3 at 2.

     The agreement also contains the following provision addressing class or representative claims:

> Nothing in this Agreement precludes the Employee from filing a charge or from participating in an administrative investigation of a charge before any appropriate government agency.  However, the Employee understands and agrees that the Employee cannot obtain any monetary relief or recovery from such a proceeding unless permitted by law (including claims to the Securities and Exchange Commission).  Except as otherwise required under applicable law, (1) the Employee and the Company expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Agreement; (2) the Employee and the Company agree that each will not assert class action or representative action claims against the other in arbitration or otherwise; (3) the Employee and the Company each shall submit only their own, individual claims in arbitration and will not seek to represent the interests of any other person or class of persons; and (4) the Employee and the Company agree that if the Employee is included in any class and/or collective action claims, the Employee will opt-out or refrain from opting-in to such claims.

---

CrossCountry Mortgage, LLC acquired LendUS's assets in April 2022.  *Id.*

*Id.* at 3.

"While active, LendUS utilized a third-party workforce management service, UKG, Inc. ('UKG') to obtain employees' acknowledgment of receipt and acceptance of LendUS's policies and agreements, including the Arbitration Agreement." *Id.* ¶ 12. "As a mandatory condition of employment, LendUS required that all employees acknowledge receipt and acceptance of the Arbitration Agreement, and through 2018, all employees were required to reaffirm acceptance of the Arbitration Agreement annually." *Id.* ¶ 13. "Through 2018, LendUS sent a companywide email on an annual basis, reminding all employees to complete the annual policy acknowledgement process." *Id.* ¶ 14. The process "required – as a mandatory condition of employment – employees to log in to UKG's website and acknowledge receipt and acceptance of LendUS's various policies and agreements." The exemplar email attached to Merritt's declaration is re-produced below:

> From: quot;no-reply@notifications.ultipro.comquot; <no-reply@notifications.ultipro.com>
> Date: Monday, September 17, 2018 at 12:39 PM
> To: Monique Ono <MOno@lend.us>
> Subject: Reminder: Annual Policy Acknowledgement Due Friday, September 21, 2018
>
> To Our LendUS Family,
> Just a quick reminder, it's that time of year again for us to refresh our policies based on the latest federal and state mandates, which will be taking place starting Q4'18. With the many cyber-attacks taking place this year as well as latest Supreme Court rulings, we need to be certain that our polices are properly aligned with our interpretation of the rules.
> To complete the annual policy acknowledgment process, once logged into Ultipro a pop up will alert and direct you to the Document Acknowledgment screen, which will lead you to review and acknowledge the following LendUS policies:
> - Fair Lending Policy
> - Harassment Prevention
> - Clean Desk Policy
> - Marketing and Advertising Policy
> - Appraisal Independence Policy
> - General Conduct Policy
> - Rest and Meal Period Policy (CA and WA employees)
> - Zero Loan Fraud Policy
> - LendUS Arbitration Agreement
> - LendUS Confidentiality and Non-Disclosure Agreement
>
> With the understanding that your time is valuable, we certainly appreciate you reviewing these polices and completing the acknowledgment process no later than September 21, 2018. Participation is mandatory, as it is important that we show our financial regulators that we are keeping up with current regulations. Instructions on how to complete this task are on the My Company Info page in Ultipro and a copy has been sent to your email from the HR department. Please note, acknowledgment in Ultipro confirms agreement and acknowledgement of the company polices and agreements included in this notification.
> If you have any questions, please feel free to contact your manager or HR directly.
> Thank you to everyone who has already completed this task. We thank everyone for reviewing and acknowledging your understanding of our various privacy and operations policies.
>
> Rob Hirt and the HR Team
> This communication is from REAL-FINITY, INC and may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing or using any of this information. If you receive this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act. You may not directly or indirectly reuse or re-disclose such information for any purpose other than to provide the services for which you are receiving the information.

3

ECF 29-4 at 2.

Merritt explains that "[f]ailure to agree to the terms of the Arbitration Agreement was grounds for termination of employment." Merritt Decl. ¶ 11. "Plaintiffs Greist and Schell thus would have been required to sign the Arbitration Agreement at the inception of their employment with LendUS, and they would have been required to annually reaffirm acceptance of the Arbitration Agreement through 2018." *Id.* ¶ 15. "After 2018, LendUS only required employees to acknowledge receipt and acceptance of the Arbitration Agreement upon being hired, through UKG's website, as a mandatory condition of employment." *Id.* ¶ 16. "Plaintiff Melanie Green thus was required to sign the Arbitration Agreement at the start of her employment." *Id.* ¶ 17.

"UKG maintained LendUS employees' signed policy documents and agreements on behalf of LendUS." *Id.* ¶ 18. After its "dissolution, LendUS terminated its account with UKG in June 2022." *Id.* ¶ 19. "With LendUS's account no longer active, UKG deleted the policies and agreements that LendUS's employees had signed." *Id.* ¶ 20. "Despite a diligent search, UKG was unable to recover Plaintiffs' acknowledgments of receiving and accepting the Arbitration Agreement, or any other LendUS policy or agreement." *Id.* ¶ 21. "LendUS thus does not possess and cannot retrieve Plaintiffs' signed Arbitration Agreements," though they were "required to sign the same form Arbitration Agreement as a mandatory condition of employment." *Id.* ¶¶ 22-23.

Notwithstanding the unavailability of any signed Arbitration Agreement, LendUS moves for an order staying this action and compelling Plaintiffs to pursue their claims in arbitration on an individual basis. ECF 29 ("Mot.") at 6; ECF 36 ("Reply") at 6. Plaintiffs oppose. ECF 34 ("Opp.").

**II.   LEGAL STANDARD**

"The Federal Arbitration Act ('FAA') governs motions to compel arbitration." *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1011 (N.D. Cal. Feb. 23, 2024) (citing 9 U.S.C. §§ 1, *et seq.*). In deciding such a motion, the court must consider two "gateway issues." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). First, "whether a valid agreement to arbitrate exists." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

4

1  Second, "whether the agreement encompasses the dispute at issue." *Id.* "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron*, 207 F.3d at 1130).

In determining whether an arbitration agreement exists, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Accordingly, to show that an agreement to arbitrate exists, the party seeking arbitration must demonstrate, that, when viewing the evidence in the light most favorable to Plaintiffs, "there is no genuine dispute as to any material fact" as to the formation of the arbitration agreement. *See* Fed. R. Civ. Pro. 56(a); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) ("A district court considering such a motion must give to the opposing party the benefit of all reasonable doubts and inferences that may arise.") (internal quotations and citations omitted).

"In California, general principles of contract law determine whether the parties have entered a binding agreement to arbitrate." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) (internal quotations and citations omitted). The party seeking arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing [arbitration] bears the burden of proving by a preponderance of the evidence" that the agreement is unenforceable. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997).

**III.   DISCUSSION**

LendUS argues that its inability to produce the Arbitration Agreement each Plaintiff signed is not fatal to its motion to compel arbitration. Mot. at 13. It contends that "Plaintiffs' continued employment with LendUS evidences their acceptance of the terms of the Arbitration Agreement." *Id.* On the current record, the Court disagrees.

Relying solely on Merritt's declaration for the underlying facts, LendUS falls short of carrying its burden to show that Plaintiffs assented to the Arbitration Agreement. "[W]hen an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration

5

agreement." *Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126, 130 (2019) (citations omitted). Here, Merritt declares that "LendUS required all employees, including Plaintiffs, to enter into arbitration agreements," and that the company "utilized the same form Agreement . . . for all employees." Merritt Decl. ¶¶ 9-10. While Merritt declares that Plaintiffs were "required to sign the same form Arbitration Agreement as a mandatory condition of employment," *see* Merritt Decl. ¶ 23, she does not declare that those agreements were sent to Plaintiffs or returned with signatures, that she ever reviewed Plaintiffs' signed agreements, or that the vendor who had been charged with maintaining these documents had any record showing that Plaintiffs received them or returned signed agreements. *See generally* Merritt Decl. Rather than attest to these facts, Merritt posits that "Plaintiffs Greist and Schell **thus would have been required to sign** the Arbitration Agreement . . . [,]" and that "Plaintiff Melanie Green **thus was required to sign** the Arbitration Agreement . . . ."). *See id.* ¶¶ 15, 17 (emphasis added).

These sworn statements fall short of establishing that Plaintiffs did sign the agreements as they were required to, that they received them, or that Plaintiffs were notified, in any form, that their continued employment would constitute acceptance to LendUS's arbitration policy.[3] *Cf. Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 422 (2000) (affirming order compelling arbitration where the defendant put forth substantial evidence that the plaintiff received a memorandum and brochure regarding dispute resolution procedures and the plaintiff remained employed after receiving those materials); *Sprunk v. Prisma LLC*, 14 Cal. App. 5th 785, 793 (2017) (finding that the defendant had sufficiently established that class members were bound to an arbitration agreement where its supporting declaration stated that there were two versions of the agreement, and "all class members signed at least one of those versions."); *Romero v. GE Betz, Inc.*, No. CV 16-1356 FMO (JCX), 2016 WL 9138054, at *1, *5 (C.D. Cal. June 28, 2016) (granting motion to compel arbitration where the plaintiff received a copy of his employer's ADR procedures, demonstrated in part by four email notifications to him and a certificate of completion

---

[3] While the Court acknowledges that the records necessary for LendUS to carry its initial burden are unavailable, perhaps through no fault of its own, LendUS has cited no authority establishing that the unavailability of those records relieves it of its initial burden.

6

of a training on the ADR procedure); *Dantz v. Am. Apple Grp., LLC.*, 123 F. App'x 702, 708 (6th Cir. 2005) (finding that "[m]utual assent [wa]s manifested by [the plaintiff's] continued employment after having been told explicitly that the arbitration agreement was a condition of her employment.").

The acknowledgment email on which LendUS relies is similarly deficient. Merritt declares that "[t]hrough 2018, LendUS sent a companywide email on an annual basis, reminding all employees to complete the annual acknowledgement process, which required – as a mandatory condition of employment – employees to log in to UKG's website and acknowledge receipt and acceptance of LendUS's various policies and agreements." Merritt Decl. ¶ 14. The 2018 annual email attached to Merritt's declaration is not addressed to Plaintiffs but to a Monique Ono.[4] *See* ECF 29-4 at 2. Merritt does not specifically attest that Plaintiffs received the referenced email or that they completed the acknowledgment process as directed in the email. *See generally* Merritt Decl.

Nonetheless, LendUS argues "[t]he fact that the Arbitration Agreement was expressly referenced in the annual email – regardless of position or line spacing – provided sufficient notice to employees."[5] ECF 36 at 13. This argument is unpersuasive. The email states that "[p]articipation [in the acknowledgment process] is mandatory, as it is important that we show our financial regulators that we are keeping up with current regulations." ECF 29-4 at 2. It also states that acknowledgment in Ultipro confirms agreement and acknowledgement of the company polices and agreements included in this notification." *Id.* The email, however, did not put Plaintiffs on notice that the agreement to arbitrate was a condition of employment such that their continued employment would constitute acceptance to the policies listed in the acknowledgment email, irrespective of whether they actually completed the acknowledgment process. For this

---

[4] The email is from a company called Ulitpro, so Plaintiffs question whether the email is in fact from LendUS or UKG. *See* ECF 29-4 at 2; Opp. at 14. LendUS explains that Ultipro was a predecessor of UKG. *See* Reply at 13 n.2.

[5] LendUS emphasizes that Plaintiffs do not deny receiving the 2018 email. *See* Reply at 12. But it is LendUS, not Plaintiffs, that bears the burden to establish that an agreement to arbitrate exists. *See Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 236.

7

reason, the acknowledgment email does not help LendUS carry its burden here. *Cf. Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 381 (2016) (finding that the plaintiff consented to arbitrate his claims because it was undisputed that he acknowledged the written arbitration agreement and the employee handbook, which stated that "[i]f for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook.").

Viewing the evidence in the record in the light most favorable to Plaintiffs, the Court finds that LendUS has not carried its burden to show, as a matter of law, that an arbitration agreement exists. *See Socoloff v. LRN Corp.*, 646 F. App'x 538, 539 (9th Cir. 2016) (affirming denial of motion to compel arbitration where the defendant did not notify the plaintiff "that his continued employment alone would constitute acceptance of an agreement to arbitrate.").[6] Accordingly, its motion to compel arbitration is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, LendUS's motion to compel arbitration is **DENIED**. Because this order resolves the motion to compel arbitration, LendUS's motion to stay the case pending resolution of that motion is **DENIED AS MOOT**.

An initial case management conference remains set for April 24, 2025 at 10:00 a.m. *See* ECF 48. The parties' joint case management conference statement is due by noon on April 17, 2025. *See id.*

**IT IS SO ORDERED.**

Dated: March 7, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[6] LendUS attempts to distinguish *Socoloff* because the plaintiff in that case denied having signed an arbitration agreement, unlike Plaintiffs here, who are silent on the issue. *See* Reply at 8. LendUS, however, does not explain why or how the dispute in *Socoloff* renders it inapplicable here on the issue of whether LendUS has provided sufficient notice such that Plaintiffs' continued employment suffices as assent. The Court finds *Socoloff* instructive on that point notwithstanding LendUS's attempt to distinguish it.

8