UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GREIST, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LENDUS, LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-02411-AMO<br><br>**ORDER DENYING MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Re: Dkt. No. 73 |

In this FLSA collective action, Defendant CrossCountry Mortgage, LLC moves to set aside the default entered against it on April 14, 2025. The motion is fully briefed and suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having considered the papers filed by the parties and the relevant legal authority, the Court **DENIES** the motion for the reasons set forth below.

The Court may set aside the entry of default upon a showing of "good cause." Fed. R. Civ. P. 55(c). The Court's discretion to set aside entry of default "is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994) (internal quotations and citation omitted). A court considers three factors in determining whether good cause exists: "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal quotations and citation omitted; modifications in original). A court may deny a motion to set aside an entry of default if any one of these factors favor default. *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004) (citation omitted). The defendant bears the burden of establishing that the default should be set

aside. *Id.* (citation omitted).  The Court addresses these factors below.

"[A] defendant's conduct is culpable if [they] ha[ve] received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled in part on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).  "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.' " *Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1092.  A party seeking to set aside default is not culpable – even for a knowing failure to answer – if its failure to answer is for an "understandable reason and not designed to obtain a strategic advantage in the litigation." *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. CV 16-04502-BRO (MRWx), 2016 WL 7479368, at *3 (C.D. Cal. Aug. 10, 2016) (setting aside entry of default where Defendant had "an understandable reason for failing to respond – it believed that Plaintiff did not effect sufficient service and thus a response was not required").

CrossCountry's conduct in this litigation was deliberate in that it was designed to manipulate the legal process and take advantage of Plaintiffs.  It vigorously defended this action until March 19, 2025, when it stipulated with Plaintiffs to extend the deadline for its answer to the operative complaint to March 28, 2025.  Dkt. No. 56.  It also appeared at a case management conference held on April 24, 2025, at which CrossCountry acknowledged that the entry of default necessitated a motion to set it aside.[1]  *See* Dkt. No. 74-2 at 14.

---

[1] The declaration from CrossCountry's counsel states that at the case management conference, she indicated that she "hoped to resolve the entry of default against CrossCountry without motion practice." Dkt. No. ¶ 73-1.  The transcript from those proceedings does not reflect that statement. Dkt. No. 74-2.  Counsel clearly indicated that the entry of default necessitated a motion from her office.  That motion, however, was not filed until July 1, 2025, more than two months after the case management conference.  Dkt. No. 73.  While counsel's declaration indicates efforts were made to resolve the issue by phone and email on May 7, 2025 and June 11, 13, and 17, 2025, Dkt. No. 73-1 ¶¶ 5-7, the delay in bringing a motion that counsel acknowledged needed to be filed can only be explained by a strategic decision to delay bringing the motion until Plaintiffs would be precluded from invoking the tolling agreement they had reached with CrossCountry, as discussed below.  Moreover, although CrossCountry rightly points out that this District's Professional Guidelines encourage parties to meet and confer in good faith to avoid unnecessary motion

CrossCountry then stopped defending the action at a critical point, leaving Plaintiffs' motions for equitable tolling and to conditionally certify the collective pending without the benefit of any response from CrossCountry. CrossCountry twice elected not to substantively respond to the motion. CrossCountry first declined to file a substantive response when its opposition was originally due on September 20, 2024, before it defaulted. *See* Dkt. No. 43. Instead, CrossCountry filed a two-page document stating, in part: "If the Court does not grant an order dismissing CrossCountry from this action, then CrossCountry would request leave to file a substantive response opposing Plaintiffs' motion." *Id.* at 1.

When the Court set a new deadline – May 5, 2025 – for a substantive response to Plaintiffs' motions during the case management conference at which CrossCountry appeared, that deadline came and went without CrossCountry, in default at the time, taking steps to seek leave to file a response. This inaction marked a departure from the position CrossCountry took in its September 20, 2024 filing, and it was intentional. *Compare* Dkt. No. 43 *with* Dkt. No. 74-2 at 14. At the April 24 case management conference, CrossCountry stated that because Plaintiffs asserted claims against CrossCountry on a successor-in-interest theory, it would have no substantive information to add in opposition to a motion for certification and would not need to oppose such a motion. This position conveniently ignores that CrossCountry had entered into a tolling agreement with Plaintiffs,[2] which would in fact constitute substantive information relevant to the

---

practice, Dkt. No. 75 at 2, the Guidelines should not be misconstrued to excuse a party from taking no steps, for more than two months, to demonstrate its intention to actively defend itself notwithstanding a default. Indeed, Plaintiffs had indicated as early as May 13, 2025, Dkt. No. 74-3, that they intended to oppose any motion to set aside the default, which CrossCountry omitted from its opening brief and supporting papers.

[2] The tolling agreement provides:

> The Parties further agree and stipulate that no statute of limitations on any claim asserted in the Operative Complaint or which could be asserted based on facts alleged therein arising under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), , [*sic*] shall run against Plaintiffs or members of the putative FLSA Collective (as defined in the Operative Complaint), and the same shall be tolled, during the period of May 16, 2024 through and including the filing of Defendant's answer, if any, in this matter.

Dkt. No. 15.

3

motion.

In addition to declining to defend the action on the merits, CrossCountry did not move to set aside the default until July 1, 2025. This was almost a month after the Court resolved Plaintiffs' motions to conditionally certify the collective and for equitable tolling on June 6, 2025, and days after the Court approved a stipulation between Plaintiffs and Defendant LendUS LLC about notice to the FLSA collective on June 26, 2025. *See* Dkt. Nos. 70, 72, 73. The timing of these events can only be explained, on this record, by CrossCountry's culpable conduct. CrossCountry deferred filing its motion to set aside the default until it knew Plaintiffs would be precluded from invoking the tolling agreement. This alone is sufficient to deny CrossCountry's motion. *See Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) ("[A] finding of culpability on the part of a defaulting defendant is sufficient to justify the district court's exercise of its discretion to deny relief from a default judgment."); *cf. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1094 (district court erred in finding culpable conduct where it "did not point to any 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process' ").[3] The Court nonetheless proceeds to address prejudice because it further highlights CrossCountry's culpability.

A plaintiff is prejudiced when the plaintiff is hindered from pursuing their claim. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also*, *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. "For the setting aside of a default judgment to be considered prejudicial, it must result in more than delay. Rather, the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996).

Setting aside the default imposes a tangible harm on Plaintiffs. Following the Court's

---

[3] CrossCountry cites *Brandt* in support of its request that, even if this Court finds culpable conduct, it nonetheless has discretion to set aside the default. Dkt. No. 75 at 6. Though a district court may, but need not, "exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability," *Brand*, 653 F.3d at 1112, CrossCountry makes no argument nor proffers any facts demonstrating why the Court should refrain from exercising its discretion here.

4

1    order on Plaintiffs' motions to conditionally certify the collective and for equitable tolling, the

2    parties raised an issue to the Court on June 16, 2025. Dkt. No. 71. The parties had reached

3    agreement as to the form procedure for disseminating notice to the collective, "[w]ith the

4    exception of one issue -- the proper start of the liability period for the putative collective for notice

5    purposes in light of a tolling agreement entered into between Plaintiffs and Defendant

6    CrossCountry." Dkt. No. 72 at 2. While Plaintiffs proposed that the liability period be defined

7    consistent with that agreement, the Court did not adopt Plaintiffs' proposal. Dkt. No. 72.

   Within days of the Court's order adopting Defendant's proposal, CrossCountry filed its motion to set aside default. Dkt. Nos. 72, 73. CrossCountry's contention that there is no prejudice to Plaintiffs because "there have been no material changes to relevant evidence or discovery," Dkt. No 73 at 5, misses the point. Here, Plaintiffs have been deprived of the benefits of the tolling agreement they reached with CrossCountry because, at the time they sought to invoke that agreement, CrossCountry remained in default. Despite CrossCountry's unsupported contentions to the contrary, Dkt. No. 75 at 3, Plaintiffs' ability to pursue their claims has been hindered because they cannot pursue claims outside the relevant limitations period, which CrossCountry's tolling agreement would have expanded. *Cf. Aristocrat Techs., Inc. v. High Impact Design & Ent.*, 642 F. Supp. 2d 1228, 1233 (D. Nev. 2009) (finding that the plaintiffs would suffer no prejudice plaintiffs did not contend any evidence had been lost or become unavailable nor made a showing that their ability to litigate their case had been hindered).

   CrossCountry's attempts to minimize its litigation conduct as a mere inadvertent failure to file an answer, Dkt. No 73 at 7, or "unintentional procedural misstep," Dkt. No. 75 at 1, are not persuasive. To date, CrossCountry has filed no answer, even though it apparently prepared one on May 7, 2025,[4] and asked Plaintiffs if they objected to its filing at that time. *See* Dkt. No. 73-1 ¶ 5. CrossCountry failed to file a response to Plaintiffs' motion to certify the collective, knowing that it had not done so by the original deadline, at which time it indicated its intent to later file a

---

[4] This was more than one month after the extended stipulated deadline of March 28, 2025, further undermining CrossCountry's claim of mere inadvertence.

United States District Court
Northern District of California

substantive response if it remained part of the case, and being apprised of the new response deadline set by the Court during the case management conference held on April 24, 2025, at which point CrossCountry abandoned its previously-stated intention to oppose Plaintiffs' motion.[5] It then took no further action to defend itself in this case until it moved to set aside the default. This warrants denial of CrossCountry's motion. *Cf. TCI Grp. Life Ins. Plan*, 244 F.3d at 701 (reversing district court's denial of motion to vacate judgment where the defendant had "litigated diligently" since the entry of default judgment and the plaintiff established no harm).

Setting aside the default also creates a "greater opportunity for fraud or collusion." *Thompson*, 95 F.3d at 433-34. CrossCountry may have been hoping to obtain the same relief Defendant LendUS obtained when it moved to set aside the default and prevailed. *See* Dkt. No. 53. But the record before the Court on that motion did not document the gamesmanship CrossCountry engaged in here.[6] Moreover, Defendants' alternating defaults cut against any claim by CrossCountry that its conduct is inadvertent. To the contrary, at this stage of the proceedings, "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond," *TCI Grp. Life Ins. Plan*, 244 F.3d at 698, and under such circumstances, the Court finds that CrossCountry has engaged in culpable conduct that led to the default and that the reopening of the default judgment would prejudice Plaintiffs. While CrossCountry contends that it has meritorious defenses, and the Court acknowledges that "judgment by default is a drastic step appropriate only in extreme circumstances," *see Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1091, the facts outlined above constitute such extreme circumstances.

---

[5] CrossCountry contends that any prejudice to Plaintiffs resulting from the inability to invoke the tolling agreement was due to "their own decision to force CrossCountry to file the instant motion rather than stipulating to set aside the entry of the default as requested by CrossCountry weeks earlier." Dkt. No. 75 at 3. This is unconvincing, and it ignores the strategic timing of the instant motion. *Cf. BioQ Pharma Inc. v. Star Cap. Invs. LLC*, No. 23-CV-00399-AMO, 2024 WL 116306, at *4 (N.D. Cal. Jan. 10, 2024) (crediting argument that additional delay caused by the defendants' default could have been mitigated by avoiding motion practice and finding no prejudice where the plaintiff could not describe how setting aside default would hinder its claims).

[6] Unlike CrossCountry, LendUS continued to demonstrate its intent to defend by filing opposition briefs to Plaintiffs' motions and separately moving for its own relief. *See, e.g.*, Dkt. Nos. 17 (entry of default), 29 (motion to compel arbitration), 30 (answer to complaint), 32 (motion to stay), 46 (opposition to motion for equitable tolling).

Accordingly, CrossCountry's motion to set aside the default is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 20, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN
United States District Judge**