United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BARBARA GREIST, et al.,

Plaintiffs,

v.

LENDUS, LLC, et al.,

Defendants.

Case No. 24-cv-02411-AMO (LB)

**DISCOVERY ORDER**

Re: ECF No. 113

**INTRODUCTION**

The parties in this wage-and-hour collective action under the Fair Labor Standards Act (FLSA) disagree about the number of opt-in plaintiffs to be selected for representative discovery following the trial judge's order conditionally certifying the collective action. Defendant LendUS proposes conducting written discovery as to thirty of forty-six plaintiffs. The plaintiffs contend that this is excessive and propose limiting the number to eighteen plaintiffs.[1] Discovery is ordered as follows: LendUS may serve written discovery on twenty-one plaintiffs. Each party may select one third, and the final third will be selected randomly. Depositions are limited to ten.

---

[1] Disc. Letter Br. – ECF No. 113; Order – ECF No. 70. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 24-cv-02411-AMO (LB)

**STATEMENT**

The plaintiffs are current and former employees (Loan Assistants or Loan Processors) of LendUS, a mortgage lender, who allege that LendUS failed to pay them for overtime hours worked.[2] After the court conditionally certified the collective action in June 2025, forty-three plaintiffs opted in to the collective, which (with the three named plaintiffs) results in forty-six opt-in plaintiffs.[3] The forty-six opt-in plaintiffs each worked at one of twenty LendUS locations.[4]

The parties agreed to limit discovery to a specific number of opt-in plaintiffs but could not agree on the number.

To allow it to assess bases for decertification and oppose a motion for class certification, LendUS proposes limited discovery of thirty opt-in plaintiffs — two from each prior LendUS location where multiple plaintiffs worked, and one from the remaining locations where only one plaintiff worked — plus opt-in plaintiffs who submit an affidavit or declaration. It would like to select the discovery group itself but is amenable to allowing each side to pick fifteen opt-ins if the resulting group covers all twenty locations. LendUS would limit written discovery to eight interrogatories and twelve document requests per plaintiff and will limit depositions to ten opt-in plaintiffs.[5]

The plaintiffs propose limiting the discovery group to eighteen plaintiffs (including the named plaintiffs), with LendUS's selecting one-third of the group, the plaintiffs' selecting another third, and the last third selected randomly. They oppose allowing LendUS to conduct additional discovery for opt-in plaintiffs outside the discovery group who submit an affidavit or declaration.[6]

The court held a discovery hearing on January 29, 2026.

---

[2] First Am. Compl. (FAC) – ECF No. 19 at 2–4 (¶¶ 1–14).

[3] Order – ECF No. 70; Opt-in Notices – ECF Nos. 77–99.

[4] Disc. Letter Br. – ECF No. 113 at 2.

[5] *Id.* at 2–3, 2 n.2.

[6] *Id.* at 4–5.

ORDER – No. 24-cv-02411-AMO (LB)                    2

**ANALYSIS**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b).

"Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up and quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (cleaned up).

There are three issues: (1) the appropriate sample size for the discovery group; (2) the method of selecting members of the discovery group; and (3) whether LendUS may seek additional discovery from opt-in plaintiffs outside the discovery group who submit an affidavit or declaration.

FLSA allows one or more employees to bring a collective action on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of L.A.*, 903 F.3d 1090, 1117 (9th Cir. 2018). After conditional certification of a collective, parties engage in discovery before the defendants move to decertify the collective "for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* at 1109–10. To determine the appropriate scope of discovery at this stage, the court balances two considerations: the idea that "requiring full discovery from all opt-ins undermines the purpose and utility of collective actions,"

United States District Court
Northern District of California

and the amount of discovery that affords the defendant a reasonable opportunity to identify any defenses and bases for decertification. *Wellens v. Daiichi Sankyo Inc*, No. C-13-00581-WHO (DMR), 2014 WL 7385990, at *3–4 (N.D. Cal. Dec. 29, 2014); *see also Ribota v. County of San Bernardino*, No. EDCV 20-505-JGB (KKx), 2022 WL 16894856, at *3–4 (C.D. Cal. Oct. 3, 2022) (rejecting the defendant's request for additional depositions where it did not demonstrate that more discovery was proportional to the needs of the case).

Courts favor selection methods for the discovery group that decrease selection bias. *See Santos v. United Parcel Serv. Inc. (Ohio)*, No. 18-cv-03177-EMC, 2020 WL 6784220, at *4 (N.D. Cal. Nov. 18, 2020) (samples should "be truly random" and avoid "selection bias"); *Ribota*, 2022 WL 16894856, at *4 (faulting the defendant for failing "to address why its proposal to specifically select deponents will not result in selection bias").

Here, LendUS has not demonstrated that it needs written discovery from thirty of forty-six plaintiffs to identify its defenses or show that the collective is not similarly situated. Although the small size of this opt-in group justifies a sample size that is a larger percentage of the collective from cases with larger opt-in groups, LendUS has not shown that a sample size of less than thirty will not serve its purposes. Discovery from plaintiffs employed at different locations is important based on the nature of the plaintiffs' claim that "LendUS had a common, uniform, and widespread policy and practice that discouraged Loan Assistants and Loan Processors from reporting overtime hours."[7] Whether the alleged policy was actually common across locations is a legitimate inquiry regarding the similarity of the collective's situations, although it may not require discovery from plaintiffs at all twenty locations. *Cf. Campbell*, 903 F.3d at 1116 ("A systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees.").

Written discovery will proceed as follows: the discovery group will be twenty-one plaintiffs (inclusive of opt-in and named plaintiffs), and each party may select one third. The final third will be randomly selected through means agreed upon by the parties. The parties' selections must each

---

[7] FAC – ECF No. 19 at 3 (¶ 6).

United States District Court
Northern District of California

come from at least three locations to ensure inclusion of employees from a larger number of former LendUS locations. Written discovery is limited to eight interrogatories and twelve document requests per plaintiff in the discovery group, as LendUS proposes.[8] The number of depositions limited to ten.

Additional discovery from plaintiffs outside the discovery group who submit affidavits or declarations is denied because there is no specific showing of need. Fed. R. Civ. P. 26(b)(1). It would defeat the purpose of limiting discovery to a representative sample, here of almost fifty percent of the collective from a wide range of locations. LendUS can use other means to discredit plaintiffs' declarations and affidavits, such as expert analysis and documentary evidence. *See Wellens*, 2014 WL 7385990, at *4 (the defendant can support its argument for decertification with expert analysis and documentary evidence like time sheets and human resources evaluations). If a circumstance justifying additional discovery arises, the parties must confer and raise any dispute through the court's discovery disputes in the standing order (attached).

In sum, LendUS may serve eight interrogatories and twelve document requests to twenty-one plaintiffs selected according to the methodology detailed above and may conduct a maximum of ten depositions.

This resolves ECF No. 113.

**IT IS SO ORDERED.**

Dated: January 29, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[8] Disc. Letter Br. – ECF No. 113 at 3.